### UNITED STATES DISTRICT COURT
### DISTRICT OF SOUTH CAROLINA
### CHARLESTON DIVISION

Clark Units, LLC, Jetco Group Inc., Caleco Investments, LLC, Rocket City Portable McStorage, LLC, Sail Away Storage Corp., Q&S LLC, KAM LLC, Plan D LLC, Bird and Pup Inc., MAC Industries Inc., Unity Group East, Inc., KC Portable Storage, Inc., Evayan Mobile Storage, Inc., Units Storage and Moving of Minnesota, LLC, Carella Storage, LLC, Blackmon Storage Solution, Inc., Purdy Good Co., StroCo Ventures, Inc., ATH Storage, LLC, Martroy Storage, LLC, UNITS Moving & Portable Storage Seattle & Bellevue, Inc., and StoreU247, LLC,

     *Plaintiffs*,

v.

UNITS Franchising Group, Inc.,

     *Defendant*.

_____/

CASE NO.: 2:25-cv-12901-BHH

### COMPLAINT

Plaintiffs, Clark Units, LLC, Jetco Group Inc., Caleco Investments, LLC, Rocket City Portable McStorage, LLC, Sail Away Storage Corp., Q&S LLC, KAM LLC, Plan D LLC, Bird and Pup Inc., MAC Industries Inc., Unity Group East, Inc., KC Portable Storage, Inc., Evayan Mobile Storage, Inc., Units Storage and Moving of Minnesota, LLC, Carella Storage, LLC, Blackmon Storage Solution, Inc., Purdy Good Co., StroCo Ventures, Inc., ATH Storage, LLC, Martroy Storage, LLC, UNITS Moving & Portable Storage Seattle & Bellevue, Inc., and StoreU247, LLC, (collectively, "Plaintiffs"), complaining of Defendant, UNITS Franchising Group, Inc. ("Defendant" or "UFG"), would allege and show unto this Honorable Court as follows:

## PARTIES, JURISDICTION, AND VENUE

1.     Plaintiff, Clark Units, LLC, is a Texas limited liability company with its principal place of business in Dallas, Texas. Clark Units, LLC entered into a Franchise Agreement with Defendant on or around October 5, 2021.

2.     Plaintiff, Jetco Group, Inc., is a Missouri corporation with its principal place of business in St. Louis, Missouri. Jetco Group, Inc. entered into a Franchise Agreement with Defendant on or around March 10, 2021.

3.     Plaintiff, Caleco Investments, LLC, is a Florida limited liability company with its principal place of business in Miami, Florida. Caleco Investments, LLC entered into a Franchise Agreement with Defendant on or around November 26, 2017.

4.     Plaintiff, Rocket City Portable McStorage, LLC, is an Alabama limited liability company with its principal place of business in Huntsville, Alabama. Rocket City Portable McStorage, LLC entered into a Franchise Agreement with Defendant on or around October 13, 2022.

5.     Plaintiff, Sail Away Storage Corp., is a New York corporation with its principal place of business in East Setauket, New York. Sail Away Storage Corp. entered into a Franchise Agreement with Defendant on or around April 29, 2021.

6.     Plaintiff, Q&S LLC, is an Iowa limited liability company with its principal place of business in Des Moines, Iowa. Q&S LLC entered into a Franchise Agreement with Defendant on or around December 16, 2020.

7.     Plaintiff, KAM LLC, is a Kentucky limited liability company with its principal place of business in Louisville, Kentucky. KAM LLC entered into a Franchise Agreement with Defendant on or around September 20, 2021.

ZARCO EINHORN SALKOWSKI, P.A.
ONE BISCAYNE TOWER | 2 S. BISCAYNE BLVD., 34TH FLOOR | MIAMI, FLORIDA 33131 | T: (305) 374-5418 | F: (305) 374-5428

8.      Plaintiff, Plan D LLC, is an Ohio limited liability company with its principal place of business in Akron, Ohio. Plan D LLC entered into a Franchise Agreement with Defendant on or around August 13, 2021.

9.      Plaintiff, Bird and Pup Inc., is a New Jersey corporation with its principal place of business in Pequannock, New Jersey. Bird and Pup Inc. entered into a Franchise Agreement with Defendant on or around March 4, 2020.

10.     Plaintiff, MAC Industries Inc., is a Nebraska corporation with its principal place of business in Ohama, Nebraska. MAC Industries Inc. entered into a Franchise Agreement with Defendant on or around January 27, 2021.

11.     Plaintiff, Unity Group East, Inc., is a Georgia corporation with its principal place of business in Atlanta, Georgia. Unity Group East, Inc. entered into a Franchise Agreement with Defendant on or around May 28, 2024.

12.     Plaintiff, KC Portable Storage, Inc., is a Kansas corporation with its principal place of business in Kansas City, Kansas. KC Portable Storage, Inc. entered into a Franchise Agreement with Defendant on or around September 8, 2021.

13.     Plaintiff, Evayan Mobile Storage, Inc., is a Massachusetts corporation with its principal place of business in North East Boston, Massachusetts. Evayan Mobile Storage, Inc. entered into a Franchise Agreement with Defendant on or around December 20, 2021.

14.     Plaintiff, Units Storage and Moving of Minnesota, LLC, is a Minnesota limited liability company with its principal place of business in Minneapolis, Minnesota. Units Storage and Moving of Minnesota, LLC entered into a Franchise Agreement with Defendant on or around March 24, 2021.

15.     Plaintiff, Carella Storage, LLC is a Massachusetts limited liability company with

ZARCO EINHORN SALKOWSKI, P.A.
ONE BISCAYNE TOWER | 2 S. BISCAYNE BLVD., 34TH FLOOR | MIAMI, FLORIDA 33131 | T: (305) 374-5418 | F: (305) 374-5428

its principal place of business in Waltham, Massachusetts. Carella Storage, LLC entered into a Franchise Agreement with Defendant on or around December 15, 2020.

16.     Plaintiff, Blackmon Storage Solutions, Inc., is an Alabama corporation with its principal place of business in Birmingham, Alabama. Blackmon Storage Solutions, Inc. February 8, 2022.

17.     Plaintiff, Purdy Good Co., is a Wisconsin corporation with its principal place of business in Madison, Wisconsin. Purdy Good Co. entered into a Franchise Agreement with Defendant on or around September 20, 2022.

18.     Plaintiff, StroCo Ventures, Inc., is a Texas corporation with its principal place of business in Keller, Texas. StroCo Ventures, Inc. entered into a Franchise Agreement with Defendant on or around December 15, 2020.

19.     Plaintiff, ATH Storage, LLC, is a Massachusetts limited liability company with its principal place of business in Wellesley, Massachusetts. ATH Storage, LLC entered into a Franchise Agreement with Defendant on or around December 17, 2020.

20.     Plaintiff, Martroy Storage, LLC, is an Oklahoma limited liability company with its principal place of business in Oklahoma City, Oklahoma. Martroy Storage, LLC entered into a Franchise Agreement with Defendant on or around October 12, 2021.

21.     Plaintiff, UNITS Moving & Portable Storage Seattle & Bellevue Inc. is Washington corporation with its principal place of business in Seattle, Washington. UNITS Moving & Portable Storage Seattle & Bellevue Inc. entered into a Franchise Agreement with Defendant.

22.     Plaintiff, StoreU247, LLC, is a Tennessee limited liability company with its principal place of business in Knoxville, Tennessee. Store U247, LLC entered into a Franchise

ZARCO EINHORN SALKOWSKI, P.A.
ONE BISCAYNE TOWER | 2 S. BISCAYNE BLVD., 34TH FLOOR | MIAMI, FLORIDA 33131 | T: (305) 374-5418 | F: (305) 374-5428

Agreement with Defendant on or around October 10, 2022.[1]

23.     Defendant, UNITS Franchising Group, Inc., is a South Carolina corporation with its principal place of business in Berkeley County, South Carolina.

## JURISDICTION AND VENUE

24.     Jurisdiction of this Court over this action is invoked pursuant to 28 U.S.C. § 1332(a)(1).  There is complete diversity of citizenship between Plaintiffs and Defendant, and the matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000.

25.     Venue is proper in this district pursuant to Section 22 of the parties' respective Franchise Agreements. Specifically, the Franchise Agreement signed by each Plaintiff contain a provision that requires any disputes that arise from the franchise relationship be submitted to "the jurisdiction and venue of any court of general jurisdiction in Charleston County, South Carolina and the jurisdiction and venue of the United States District Court for the District of South Carolina." Ex. A, § 22.5.

## NATURE OF THIS ACTION

26.     This case involves an unfortunately all too familiar example of a franchisor, motivated by the greed of its founder/owner, Michael McAlhany, that has used its vast power in the franchise relationship to extract more fees from franchisees than it is contractually entitled to receive, both directly and indirectly, through vendor relationships. Since the inception of the franchise relationship, Plaintiffs were destined to fail because their decision to invest in the UNITS brand was premised on false and misleading representations that the products and services offered through the business opportunity were unique and proprietary in ways that set the brand apart from

---

[1] The Plaintiffs' respective franchise agreements are collectively referred to as the "Franchise Agreements." A copy of a sample franchise agreement is annexed hereto as **Exhibit "A."**

**ZARCO EINHORN SALKOWSKI, P.A.**
ONE BISCAYNE TOWER | 2 S. BISCAYNE BLVD., 34TH FLOOR | MIAMI, FLORIDA 33131 | T: (305) 374-5418 | F: (305) 374-5428

its competitors, which Plaintiffs later learned to be nothing more than fraudulent representations that UFG made to Plaintiffs in order to entice them to invest in the UFG franchise system. In reality, the products and services were not unique and proprietary as competitors in this industry had access to and were utilizing the same products and services.

27.     Plaintiffs are current or former UNITS franchisees who operated a UNITS franchised business during all times relevant to this dispute and have executed a franchise agreement with UFG.

28.     Most recently, UFG forced franchisees to implement an ill-planned and defective point-of-sale system ("POS"), i.e., StoreSmart. Among other severe problems, the deficiencies with the POS caused billing errors and produced inaccurate reports, which wreaked havoc and caused financial harm to the franchisees' businesses and also negatively impacted Plaintiffs' relationships with their existing customers.

29.     To make matters worse, and despite the many franchisees who are in dire financial straits or who have been forced to cease operations as a result of UFG's misrepresentations and other failures, UFG has continued to improperly force Plaintiffs to purchase non-proprietary products at above market rates from suppliers and brokers for its own personal benefit without regard to the reasonable commercial interests and economic well-being of its franchisees.

## GENERAL ALLEGATIONS

**A.    The UNITS System**

30.     UFG offers "franchises to operate UNITS Moving and Portable Storage businesses and supply select proprietary equipment and related materials[.]"[2] Ex. B, 2020 FDD at 6.

---

[2] A true and correct copy of the relevant portions of UFG's 2020 Franchise Disclosure Document ("2020 FDD") is annexed hereto as **Exhibit "B."**

ZARCO EINHORN SALKOWSKI, P.A.
ONE BISCAYNE TOWER | 2 S. BISCAYNE BLVD., 34TH FLOOR | MIAMI, FLORIDA 33131 | T: (305) 374-5418 | F: (305) 374-5428

31.     UFG advertises the UNITS franchise opportunity as a business that

operates according to [UFG's] **proprietary system**, the characteristics of which
include (a) **proprietary, custom-built containers** (the "UNITS® Containers") and
related equipment, including hydraulic tilt bed trailers referred to as "UNITS®
Moving and Portable Storage Delivery Systems" (collectively "UNITS®
Equipment"), (b) standards and specifications for the provision of mobile storage
services and related products and services, (c) distinctive signage, (d) sales
techniques, and merchandising, marketing, advertising, and inventory management
systems, and (e) and general procedures for operating and managing a mobile
storage business . . . (the "System").

*Id.* (emphasis added).

32.     During the relevant period, and when each Plaintiff was vetting the franchise
opportunity, Plaintiffs relied upon UFG's representations in Item 1 of the FDD regarding its unique
and proprietary "System" as part of their ultimate decision to invest in the UNITS franchise
opportunity.  Plaintiffs have now learned that UFG's representations regarding a proprietary
system were blatantly false and misleading.

33.     Specifically, there is nothing proprietary about the UNITS containers or the related
equipment such as trailers, trucks, and Robo/Cardinal Mules. Plaintiffs have confirmed that the
containers and other equipment mandated by UFG are manufactured and supplied by various third
parties, who offer the identical products for sale to the public and UFG's competitors at a lower
price than that offered by UFG to its franchisees. Had each Plaintiff known that UFG did not have
a proprietary system or proprietary, custom-built containers, Plaintiffs would not have invested
into the UFG franchise system and could have avoided their substantial losses.[3]

34.     UFG further misrepresented the franchise opportunity during Discovery Day—
after Plaintiffs acknowledged receipt of their respective FDDs but before they signed their

---

[3] In Item 14 of the 2020 FDD, UFG baselessly asserts that it owns "certain copyrights in the Manual,
UNITS® Operating Software, marketing materials and other copyrightable items that are part of the
System" but also admits that it has "not registered these copyrights with the United States Registrar of
Copyrights and need not do so to protect them." *Id.* at 32.

ZARCO EINHORN SALKOWSKI, P.A.
ONE BISCAYNE TOWER | 2 S. BISCAYNE BLVD., 34ᵀᴴ FLOOR | MIAMI, FLORIDA 33131 | T: (305) 374-5418 | F: (305) 374-5428

respective Franchise Agreements—by stating that franchisees were to receive all revenue for local and long-distance delivery charges with respect to long distance moves ("LDM"). However, in reality, UFG has retained a majority of system-wide LDM revenue.

35.    According to Item 19 of several of UFG's FDDs, the average annual gross profit margin for franchisees systemwide has steadily declined since 2019. As the FDDs reflect, the average annual gross profit margin for franchisees systemwide was 36.9% for calendar year 2018, which fell to 29.8% for calendar year 2021, and then to 17.8% for calendar year 2023, and has now dropped down to 6.0% for calendar year 2024. Despite the stark contrast and steady decline in franchisee performance systemwide year over year, UFG has failed to address the overall decline and particularly, the growing number of franchisees that have been forced to cease operations or are in jeopardy of doing so, due to the viability of the business opportunity (or lack thereof).

36.    It appears that the declining performance of franchisees systemwide can be attributed to UFG's improper conduct, which is motivated by greed and personal financial gain of the company and its founder rather than the betterment of the franchise system as a whole or the success of its franchisees. To provide just a few examples, which are more fully detailed below, since 2019 through present day, UFG has grown its gross revenue stream through the sale of containers and equipment to Plaintiffs at an inflated price, while simultaneously refusing to allow franchisees to explore alternative and more affordable options as franchisees are entitled to do under their respective Franchise Agreements. UFG has failed to properly disclose these purchasing restrictions and the related financial benefits it has received from franchisee-required purchases under Item 8 of its FDDs at least since 2019.

ZARCO EINHORN SALKOWSKI, P.A.
ONE BISCAYNE TOWER | 2 S. BISCAYNE BLVD., 34TH FLOOR | MIAMI, FLORIDA 33131 | T: (305) 374-5418 | F: (305) 374-5428

37.     Further, UFG and its founder have improperly subsidized both corporate and personal expenses through funds collected from Plaintiffs for a particular purpose (i.e. Advertising Fund) and other funds/resources that should be allocated to franchisees for training and other general support services. For example, even though UFG's corporate locations in Charleston, SC and Charlotte, NC do not pay royalty or advertising fees like the rest of the franchise system, the operational expenses related to UFG's corporate locations and debts/liabilities of UFG's affiliate companies are funded through UFG's corporate accounts, which are also co-mingled with franchisee-related revenue such as royalties.

38.     To make matters worse, various personal expenses of UFG's CEO, Mr. Michael McAlhany, related to travel, personal aircrafts, and other businesses have been re-classified and funded through UFG's accounts. Meanwhile, a significant portion of UFG's general and administrative expenses are improperly funded through the Advertising Fund, as more fully addressed below.

**B.    Computer Software and Point-of-Sale System**

39.     The Plaintiffs' respective Franchise Agreements generally permit UFG to implement a particular point-of-sale ("POS") system. *See* Ex. A, 2020 Franchise Agreement, § 11.5; *see also* Ex. B, 2020 FDD, Item 11, at p. 25. Interestingly, UFG's 2020 FDD, UFG described its then-required software system as "proprietary software" that "has been used by [UFG's] affiliates in the operation of a similar business since January of 2005." Ex. B, 2020 FDD, at p. 26. Therefore, the Plaintiffs were led to believe that this system was fully functional, operational, and free of defects/glitches.

40.     Plaintiffs depend exclusively on UFG's POS system to perform essential business functions, including but not limited to, "conduct scheduling, dispatching, accounting, inventory

ZARCO EINHORN SALKOWSKI, P.A.
ONE BISCAYNE TOWER │ 2 S. BISCAYNE BLVD., 34TH FLOOR │ MIAMI, FLORIDA 33131 │ T: (305) 374-5418 │ F: (305) 374-5428

management, receivable tracking, point-of-sale functions, and related activities." *Id.* UFG is responsible for the initial training and ongoing support of any POS system that it mandates. *Id.*; *see also* Ex. A, 2020 Franchise Agreement, § 11.5.

41.     As such, it is incumbent upon UFG to provide the franchisees with a fully functional software system that has been properly vetted and tested prior to its implementation. Based on UFG's representations that its existing software was "proprietary" and had been utilized by UFG's affiliates since 2005, franchisees reasonably believed that any software system imposed by UFG would be fully functional and benefit their businesses by facilitating and performing basic everyday tasks. However, the latest software introduced by UFG, i.e., StoreSmart, is not fully functional and fails to meet these basic minimum operational requirements.

42.     StoreSmart was first announced back in 2023 during its development stage. Initially, a small group of franchisees were selected to test the software and numerous bugs and glitches were detected during this time. In addition to the pervasive software issues identified during the testing phase, UFG knew there was a strong possibility that the StoreSmart system could not accommodate each and every franchisee in the system.[4] *See* Ex. C, 2023 FDD, *Item 11*, at 28 ("It is possible that we might not be able to alter the Proprietary Software Program and system to accommodate each and every franchisee of the System[.]").

43.     Despite the known presence of bugs and/or glitches in the software and potential compatibility issues, the roll-out was accelerated and franchisees were given less than one month's notice back in May 2024 that they would be charged for the new software fee and the migration process would begin in June 2024. In connection with the roll-out, no support services or resources were made available to franchisees by UFG except for incomplete training videos.

---

[4] A true and correct copy of Item 11 of the 2023 FDD is annexed hereto as **Exhibit "C."**

ZARCO EINHORN SALKOWSKI, P.A.
ONE BISCAYNE TOWER | 2 S. BISCAYNE BLVD., 34TH FLOOR | MIAMI, FLORIDA 33131 | T: (305) 374-5418 | F: (305) 374-5428

44.     Prior to the launch of the Storesmart software, Plaintiffs utilized SiteLink at a cost of approximately $236.00 per month. The SiteLink software and associated monthly fees totaling $236.00 per month are the only computer software requirements contemplated in UFG's FDD for all years up to and including 2022. This monthly fee included a "support fee" to be paid to UFG or a third-party vendor for "support of UNITS® operating software." *See* 2020 Franchise Agreement, § 11.5. Plaintiffs relied on the accuracy and completeness of the FDD in determining whether to invest in the UNITS franchise.

45.     The transition from SiteLink to StoreSmart required franchisees to pay a one-time $250.00 migration fee for what UFG described as "data transfer." In addition to this one-time fee, the monthly fees associated with the transition have doubled Plaintiffs' software related fees from approximately $236.00 per month to approximately $500.00/month. This is because many franchisees, including Plaintiffs, had no choice but to maintain the SiteLink software so they can access necessary client information, which cannot be accessed through StoreSmart until this very day. Indeed, at the time StoreSmart was first introduced, UFG contemplated that franchisees "may continue to have SiteLink activated to serve as a back-up during the transition over to StoreSmart."

46.     From the outset (May 2024), Plaintiffs experienced continuous and ongoing issues with the StoreSmart POS, including but not limited to: client billing issues; inaccurate royalty reconciliations; incorrect pricing of services; inability to process discounts to clients; incorrect or missing inventory counts; franchisees being billed by credit card processing companies for initiating erroneous transactions; and inability to obtain reliable and accurate reports. These issues have persisted until present day.

47.     A ticket system was implemented by the software vendor, Suntech, to address the overwhelming variety of technical issues and problems experienced by Plaintiffs. Over two

ZARCO EINHORN SALKOWSKI, P.A.
ONE BISCAYNE TOWER | 2 S. BISCAYNE BLVD., 34TH FLOOR | MIAMI, FLORIDA 33131 | T: (305) 374-5418 | F: (305) 374-5428

thousand (2000) tickets have been submitted by Plaintiffs related to various issues with the StoreSmart software, but no meaningful solution has been provided to franchisees as Suntech has failed to identify the source of many common issues as a starting point before any bugs can be fixed. Needless to say, these issues have persisted until present day.

48.    In fact, UFG has failed to distribute to Plaintiffs their monthly operations reports since the migration took place back in May 2024. UFG's own Director of Financing has acknowledged the delays caused by the myriad of issues stemming from the premature launch of StoreSmart.

49.    Since the launch of StoreSmart, Plaintiffs have been unable to fully devote their time and efforts to the actual operation of their businesses but instead have been forced to spend countless hours correcting the billing errors, among others, caused by StoreSmart. UFG has breached Section 11.5 of the Franchise Agreements by unilaterally ceasing to provide support services for the StoreSmart software that it was contractually obligated to provide while continuing to insist upon the payment of excessive and duplicative fees.

50.    UFG failed to take appropriate steps to effectively and timely remedy the pervasive and still existing StoreSmart POS software issues, causing further disruption in Plaintiffs' business operations. Several franchisees expressed concerns and ongoing issues with the StoreSmart software but rather than slowing down or halting the transition altogether, UFG rolled out the problem-ridden StoreSmart software systemwide.

51.    Plaintiffs have suffered monetary damages as a result of UFG's wrongful conduct. UFG acknowledged the significant issues with StoreSmart on several occasions but has yet to offer any meaningful relief or resolution to franchisees to address these ongoing software issues.

ZARCO EINHORN SALKOWSKI, P.A.
ONE BISCAYNE TOWER | 2 S. BISCAYNE BLVD., 34TH FLOOR | MIAMI, FLORIDA 33131 | T: (305) 374-5418 | F: (305) 374-5428

52.    Despite UFG's inability to provide franchisees with functioning software, in 2024, UFG collected in excess of $100,000.00 in monthly fees from its franchisees. Notably, UFG failed to disclose these fees under Item 8 of its latest 2025 FDD as it was required to do.[5] *See* Ex. C, *Item 8*.

### C.    National Advertising Fund/Brand Fund

53.    Plaintiffs seek transparency regarding UFG's use of the National Advertising Fund. Several franchisees, including Plaintiffs, expressed concerns over the lack of marketing strategies on UFG's part in growing systemwide sales and promoting the overall UNITS brand.  For example, significant expenses are paid out of the National Advertising Fund to marketing firms such as 919 Marketing, which have added little to no value to the franchisees' businesses.

54.    Pursuant to Section 10.3.4 of the Franchise Agreements, Plaintiffs are entitled to detailed accounting of the receipts and disbursements of the National Advertising Fund for the prior years. Plaintiffs' prior requests for this accounting have gone ignored and/or otherwise been addressed insufficiently with high-level summary data lacking any detail and which conflicts with the information in UFG's own financial statements.

55.    For example, UFG's most recent 2025 FDD reflects that UFG paid $530,861.00 in corporate salaries from the National Advertising Fund, which constitutes over 50% of the total National Advertising Fund contributions collected in 2024 of approximately $1 million. Yet, UFG improperly misrepresents the 2024 National Advertising Fund in its 2025 FDD spend as follows:[6]

> [i]n 2024, the Brand Fund contributions were spent as follows: 33.1% on business-to-consumer advertising, including the creation and distribution of consumer advertising, 31.3% on business-to-business advertising, including the creation, development, funding, and maintenance of national account programs, 9.1% on advertising tools, including tools to reach customers through various platforms, and

---

[5] A true and correct copy of the relevant portions of the 2025 FDD is annexed hereto as **Exhibit "D."**

ZARCO EINHORN SALKOWSKI, P.A.
ONE BISCAYNE TOWER │ 2 S. BISCAYNE BLVD., 34TH FLOOR │ MIAMI, FLORIDA 33131 │ T: (305) 374-5418 │ F: (305) 374-5428

26.5% on website hosting, development, maintenance, and optimization and the development of new online tools.

Ex. D, 2025 FDD, *Item 11* at 23.

56.     At a minimum, Plaintiffs are entitled to an ***accurate*** accounting of the Advertising Fund for years 2020-2024 under Section 10.3.4 of the Franchise Agreements and cannot be expected to rely on the unverified and unsupported summary data provided by UFG. Indeed, the information provided by UFG is flatly contradicted by UFG's own financial statements.

57.     It goes without saying that Plaintiffs' advertising contributions would be much better spent on improving UNITS' current website capabilities and the brand's overall online presence, both of which UFG claims to have devoted significant portions of the Advertising Fund but are still severely lacking. In reality, and according to UFG's own financial statements, the majority of the Advertising Fund has been used to pay for corporate salaries and annual conferences focused on building corporate relationships with third-party vendors, and personal preferences and luxuries (i.e. VIP tickets to NASCAR events).  When these improper expenditures have been brought to the attention of the UFG, franchisees' concerns have been met with resistance, hostility, and/or silence by UFG.

**D.     Vendor Relationships**

58.     UFG has taken the position that it can force Plaintiffs to purchase containers from a single "approved" vendor. The vendor that UFG has forced upon Plaintiffs offers containers at a significantly increased cost, in most cases, at least a 50% mark-up when compared to the cost advertised by other third-party vendors for the same containers. UFG has no legal right to force such requirements upon Plaintiffs and in fact, such requirement is contrary to the express terms of the Franchise Agreements. Specifically, Section 4.4.7 of the 2020 Franchise Agreement provides:

> Franchisee may purchase UNITS® Containers directly from Franchisor or lease UNITS® Containers from a third-party provider, if available. Franchisee may also obtain third-party financing for the purchase of the UNITS® Containers from Franchisor. Franchisor has no obligation to help Franchisee secure any third-party financing and makes no representations or warranties about Franchisee's ability to obtain third-party financing or the lease terms Franchisee may be able to secure.

Ex. A, 2020 Franchise Agreement, § 4.4.6.

59.    The UNITS Franchise Agreements further contemplate an alternative supplier approval process and UFG is obligated to provide a basis for rejecting an alternative supplier proposed by any of its franchisees. Yet, any time that franchisees have even suggested seeking alternative suppliers for equipment or containers, they are met with blanket denials from UFG, who has consistently maintained the position that all container and equipment purchasing must go through UFG directly.

60.    Plaintiffs are entitled to utilize and transact with alternative vendors to procure products and equipment necessary to run their businesses, especially when the equipment or product at issue is non-proprietary and can be sourced by the general public. Yet, UFG has refused to meaningfully consider alternative suppliers and equipment options for non-proprietary goods such as containers, trailers, robotic loading equipment, and trucks, all of which are necessary for UNITS franchisees to operate their businesses.

61.    Not only does UFG's conduct and refusal to consider reasonable alternatives compound franchisees' existing losses through increased container and equipment costs but it negatively impacts franchisees' ability to generate revenue due to delays and other issues associated with UFG's unreasonable specifications and payment terms to name a few.

62.    Over the past few years, UFG has placed a growing number of restrictions on its franchisees with respect to containers and equipment absent any legitimate business reason or contractual basis to justify its actions. Specifically, UFG has restricted franchisees' ability to

purchase: (i) identical or substantially similar equipment at a much lower price; (ii) used equipment or containers; and (iii) new or used containers and equipment from existing franchisees.

63.    Instead, UFG requires its franchisees to purchase brand new non-proprietary equipment of subpar quality from its designated vendor at an exorbitant price and unreasonably long delivery times. To provide just one illustrative example of the harm and negative impact to franchisees caused by UFG's actions, UFG requires franchisees to purchase trucks through a broker (even though the trucks themselves are sourced directly from common manufacturers) and trailers from a sole approved vendor, Cardinal, both in brand new condition. On average, franchisees have waited more than 6 months for the trailers to be completed by UFG's "approved" vendor, with some franchisees waiting nearly a year after submitting payment to receive their trailer. During this waiting period or in the event a fleet truck or trailer is unavailable due to repairs (both of which are regular occurrences), franchisees are faced with limited options to sustain the indefinite waiting period absent any revenue flow. For new franchisees, the inability to generate revenue just immediately after having made a significant investment in the UNITS franchise opportunity drove them further into debt and placed significant financial restraints on the business before such franchisees even commenced operations.

64.    Other franchisees that experienced a mechanical or other technical issue with their equipment had two options: operate in a limited capacity or rent a ***used*** truck or trailer from UFG at an exorbitant price.

65.    Further, Plaintiffs have faced various quality control issues with the containers provided by UFG, including but not limited to, water intrusions, rusting, and other complications as a result of surrounding weather conditions.

ZARCO EINHORN SALKOWSKI, P.A.
ONE BISCAYNE TOWER | 2 S. BISCAYNE BLVD., 34TH FLOOR | MIAMI, FLORIDA 33131 | T: (305) 374-5418 | F: (305) 374-5428

66. Plaintiffs are entitled to utilize and transact with alternative vendors to procure products and equipment necessary to run their businesses, especially when the equipment or product at issue is non-proprietary and can be sourced by the general public. Such requests have been outright rejected by UFG without any explanation or meaningful consideration. On several prior occasions and most recently in late-2024, Plaintiffs have raised issues with the cost of containers offered by UFG and suggested other third-party vendors that could provide containers at a lower cost. In response and absent any explanation, UFG has consistently maintained the position (through its VP of Franchise Operations, Erik Lorensen) that all container and equipment purchasing must go through UFG directly.

67. Even in instances where UFG has designated an approved supplier (i.e., Boxwell), UFG has interfered with and interjected itself in the business relationship between the franchisee and any third-party vendor by mandating that Plaintiffs purchase all containers and equipment exclusively through UFG at an inflated cost. For example, in late-2024, several Plaintiffs could no longer sustain their ongoing operating losses and in an attempt to lower expenses, began to explore alternative container options at a more affordable cost than that offered by UFG. Plaintiffs quickly learned that UFG instructed its approved suppliers (i.e. Boxwell) to avoid direct communication with Plaintiffs for any container purchase-related inquiries and to direct such inquiries to UFG. Boxwell has honored UFG's request in an effort to maintain their ongoing business relationship.

68. Most recently, UFG's regional developers have reiterated UFG's position and alleged equipment purchasing policy to Plaintiffs that all purchasing inquiries must go through UFG after UFG learned that franchisees had attempted to transact with Boxwell directly.

69. UFG has prevented franchisees from purchasing containers through alternative vendors or directly from the vendor designated and approved by UFG for lower pricing. UFG

ZARCO EINHORN SALKOWSKI, P.A.
ONE BISCAYNE TOWER | 2 S. BISCAYNE BLVD., 34TH FLOOR | MIAMI, FLORIDA 33131 | T: (305) 374-5418 | F: (305) 374-5428

does not possess any contractual or legal right to require its franchisees to purchase goods from UFG rather than directly from the same approved vendor.

70.     All conditions precedent to bringing this action have been waived, excused, performed, or otherwise occurred.

71.     As a result of UFG's misrepresentations in the FDD and UFG's material breaches of the Franchise Agreements, and Plaintiffs need to protect and enforce their legal rights, Plaintiffs have retained the undersigned attorneys to represent their interests and are obligated to pay them reasonable attorneys' fees and costs. Pursuant to applicable statutory law, as well as Section 21.4 of the Franchise Agreements, Plaintiffs seek to recover their attorneys' fees and costs from UFG.

## LEGAL CAUSES OF ACTION

### Count I
### Fraudulent Misrepresentation
### (In the Alternative to Counts III – VI)

72.     Plaintiffs incorporate paragraphs 1 through 71, *supra*, as if fully set forth herein.

73.     As set forth in paragraph 31, *supra*, UFG represented the UNITS business opportunity as a "proprietary system" that can be characterized as "(a) **proprietary, custom-built containers** (the 'UNITS® Containers') and related equipment, including hydraulic tilt bed trailers referred to as 'UNITS® Moving and Portable Storage Delivery Systems' (collectively 'UNITS® Equipment'), (b) standards and specifications for the provision of mobile storage services and related products and services, (c) distinctive signage, (d) sales techniques, and merchandising, marketing, advertising, and inventory management systems, and (e) and general procedures for operating and managing a mobile storage business . . . (the 'System')." *See* 2020 FDD, Item 1 (emphasis added).

74.     Plaintiffs have since learned that UFG's representations were false and misleading.

18

Specifically, there are no proprietary aspects of the UNITS containers or any related equipment, that are unique or exclusively owned or used by UFG. To the contrary, the containers and other equipment mandated by UFG are manufactured and supplied by various third parties, who offer the identical products for sale to the public and UFG's competitors at a lower price than that offered by UFG to its franchisees.

75.    Plaintiffs were also promised that in exchange for performing LDM services, they were to receive all revenue for local and long-distance delivery charges. However, UFG has retained a majority of all LDM revenue systemwide.

76.    According to Item 19 of UFG's Franchise Disclosure Documents, the average annual gross profit margin for franchisees systemwide has steadily declined since 2019 through present day, from an average annual gross profit margin for franchisees systemwide of 36.9% in calendar year 2018 to 6.0% for calendar year 2025. *Compare* Item 19 of UNITS 2019 FDD *with* Item 19 of UNITS 2025 FDD.

77.    Despite the significant and steady decline in franchisee performance systemwide from 2019 through present day, UFG has failed to address the material and stark contrast in financial performance as it is required to disclose under 16 CFR § 436.6.

78.    Upon information and well-founded belief, the declining performance of franchisees systemwide can be attributed to UFG's improper conduct motivated by UFG's personal financial gain, as set forth in paragraphs 53 through 68, *supra*. UFG misrepresented the UNITS business opportunity to Plaintiffs, among other franchisees, through its false and misleading statements concerning: (i) the proprietary nature of the UNITS containers and related equipment; (ii) the profitability of the franchisees systemwide; and (iii) the ongoing costs to operate a UNITS franchised business.

ZARCO EINHORN SALKOWSKI, P.A.
ONE BISCAYNE TOWER | 2 S. BISCAYNE BLVD., 34TH FLOOR | MIAMI, FLORIDA 33131 | T: (305) 374-5418 | F: (305) 374-5428

79.     Plaintiffs relied upon UFG's misrepresentations as part of their ultimate decision to invest in the UNITS franchise opportunity.

80.     As a result of Plaintiffs' reliance on UFG's false and misleading statements, Plaintiffs have sustained significant losses in the form of initial investment costs and ongoing business losses.

**WHEREFORE**, Plaintiffs seek that this Court: (i) to rescind their respective Franchise Agreements with UFG; (ii) award actual, compensatory, consequential, and incidental damages, including recovery of all monies expended by Plaintiffs in connection with the franchise investment and any other business losses; (iii) award pre- and post-judgment interest; and (iv) grant such other and further relief as the Court deems just and proper.

**Count II**
**Negligent Misrepresentation**
**(In the Alternative to Counts I and III – VI)**

81.     Plaintiffs incorporate paragraphs 1 through 71, *supra*, as if fully set forth herein.

82.     As set forth in paragraphs 30 through 52, *supra*, UFG made incorrect representations to Plaintiffs concerning the UNITS franchise opportunity, including but not limited to: (i) representing that the UNITS business operates according to a "proprietary system" characterized by "proprietary, custom-built containers" and related equipment when, in fact, the containers and equipment are non-proprietary and manufactured by third parties who offer identical products to the public and UFG's competitors at lower prices; (ii) representing that franchisees would receive all revenue for local and long-distance delivery charges with respect to long distance moves when, in reality, UFG has retained a majority of system-wide LDM revenue; (iii) misrepresenting the profitability and financial performance of franchisees through Item 19 of its Franchise Disclosure Documents; and (iv) representing that its computer software was

ZARCO EINHORN SALKOWSKI, P.A.
ONE BISCAYNE TOWER | 2 S. BISCAYNE BLVD., 34TH FLOOR | MIAMI, FLORIDA 33131 | T: (305) 374-5418 | F: (305) 374-5428

"proprietary" and had been successfully "used by [UFG's] affiliates in the operation of a similar business since January of 2005" when the subsequently mandated StoreSmart system was neither fully functional nor properly tested.

83.    As set forth in paragraphs 36 through 38 and 58 through 69, *supra*, UFG had a pecuniary interest in making these incorrect representations, as they caused Plaintiffs to invest in UNITS franchises and to generate ongoing revenue for UFG through franchise fees, royalties, equipment sales at inflated prices, advertising fund contributions, and other fees collected from Plaintiffs.

84.    As a franchisor offering franchise opportunities to prospective franchisees, UFG owed a duty of care to Plaintiffs to communicate truthful information regarding the franchise opportunity, including accurate information about the proprietary nature of its system and equipment, the profitability of its franchisees, revenue allocation, and the functionality of its required computer systems.

85.    UFG breached its duty of care by failing to exercise due care in communicating accurate information to Plaintiffs. As set forth in paragraphs 30 through 38 and 39 through 52, *supra*, UFG negligently failed to: (i) accurately disclose that its containers and equipment were not proprietary and could be obtained from third-party manufacturers at lower costs; (ii) accurately represent revenue allocation for long distance moves; (iii) properly disclose the declining financial performance of franchisees system-wide; and (iv) ensure that its mandated computer software systems were fully functional and properly tested before requiring franchisees to implement them.

86.    As set forth in paragraph 32, *supra*, Plaintiffs justifiably relied upon UFG's representations in the Franchise Disclosure Documents and during Discovery Day when making their decisions to invest in UNITS franchises. Plaintiffs reasonably believed that UFG, as an

ZARCO EINHORN SALKOWSKI, P.A.
ONE BISCAYNE TOWER │ 2 S. BISCAYNE BLVD., 34TH FLOOR │ MIAMI, FLORIDA 33131 │ T: (305) 374-5418 │ F: (305) 374-5428

established franchisor, would provide accurate and complete information about the franchise opportunity, and Plaintiffs had no reason to doubt the accuracy of UFG's representations at the time they were made.

87.    As a proximate result of Plaintiffs' justifiable reliance on UFG's negligent misrepresentations, Plaintiffs have suffered substantial pecuniary losses, including but not limited to: (i) their initial franchise investments; (ii) ongoing business losses; (iii) excessive costs for non-proprietary equipment and containers purchased at inflated prices through UFG; (iv) losses attributable to the defective StoreSmart POS system; (v) lost revenue from long distance moves improperly retained by UFG; and (vi) other financial damages to be proven at trial.

**WHEREFORE**, Plaintiffs seek that this Court: (i) award actual, compensatory, consequential, and incidental damages against UFG in an amount to be proven at trial; (ii) award all attorney's fees and costs incurred in connection with this dispute pursuant to Section 21.4 of the Franchise Agreements; (iii) award pre- and post-judgment interest; and (iv) grant such other and further relief as the Court deems just and proper.

## Count III
## Breach of Contract

88.    Plaintiffs incorporate paragraphs 1 through 71, *supra*, as though fully set forth herein.

89.    Plaintiffs entered into Franchise Agreements with UFG for the operation of UNITS franchised businesses located throughout the United States.

90.    Plaintiffs have performed their obligations under their Franchise Agreements.

91.    UFG breached Section 11.5 of the Franchise Agreements by failing to provide the contractually required services including but not limited to: (i) an adequate and properly

ZARCO EINHORN SALKOWSKI, P.A.
ONE BISCAYNE TOWER │ 2 S. BISCAYNE BLVD., 34TH FLOOR │ MIAMI, FLORIDA 33131 │ T: (305) 374-5418 │ F: (305) 374-5428

functioning point-of-sale system and computer system and (ii) adequate support for the StoreSmart POS system and computer software related issues.

92.    As a direct and proximate result of the above-described breaches, Plaintiffs have suffered and continue to suffer financial damages.

**WHEREFORE**, Plaintiffs seek that this Court: (i) award actual, compensatory, consequential, and incidental damages against UFG in an amount to be proven at trial; (ii) award all attorneys' fees and costs incurred in connection with this dispute pursuant to Section 21.4 of the Franchise Agreements; (iii) award pre- and post-judgment interest; and (iv) grant such other and further relief as the Court deems just and proper.

### Count IV
### Breach of Contract

93.    Plaintiffs incorporate paragraphs 1 through 71, *supra*, as though fully set forth herein.

94.    Plaintiffs entered into Franchise Agreements with UFG for the operation of UNITS franchised businesses located throughout the United States.

95.    Plaintiffs performed their obligations under their respective Franchise Agreements, including but not limited to, monthly payments to UFG equal to 2% of Gross Sales for marketing purposes specified under Section 10 of the Franchise Agreements.

96.    UFG breached the Franchise Agreements by failing to utilize the National Advertising Fund contributions in the manner specified in the Franchise Agreements.

97.    UFG further breached the Franchise Agreements by failing to provide franchisees with an annual accounting of the National Advertising Fund, despite several requests attempts by various franchisees to obtain such information.

**ZARCO EINHORN SALKOWSKI, P.A.**
ONE BISCAYNE TOWER | 2 S. BISCAYNE BLVD., 34TH FLOOR | MIAMI, FLORIDA 33131 | T: (305) 374-5418 | F: (305) 374-5428

98.     As a direct and proximate result of the above-described breaches, Plaintiffs have suffered and continue to suffer financial damages.

**WHEREFORE**, Plaintiffs seek that this Court: (i) award actual, compensatory, consequential, and incidental damages against UFG in an amount to be proven at trial; (ii) award all attorneys' fees and costs incurred in connection with this dispute pursuant to Section 21.4 of the Franchise Agreements; (iii) award pre- and post-judgment interest; and (iv) grant such other and further relief as the Court deems just and proper.

**Count V**
**Breach of Implied Covenant of Good Faith and Fair Dealing**

99.     Plaintiffs incorporate paragraphs 1 through 71, *supra*, as though fully set forth herein.

100.    Plaintiffs entered into Franchise Agreements with UFG for the operation of UNITS franchised businesses located throughout the United States.

101.    Plaintiffs performed their obligations under their respective Franchise Agreements.

102.    UFG breached the implied covenant of good faith and fair dealing contained in each of the respective Franchise Agreements by: (i) failing to provide functional and reliable software systems; (ii) failing to provide proper and timely support with respect to the StoreSmart POS system; (iii) requiring Plaintiffs to purchase products and offer services that were economically infeasible or at an inflated cost; and (iv) requiring Plaintiffs to pay various marketing and technology-related fees which are not properly disclosed under the Franchise Agreements and/or for services that UFG failed to perform adequately or entirely.

103.    UFG acted contrary to the covenant of good faith and fair dealing and improperly interfered with Plaintiffs' rights to receive the benefits of the Franchise Agreements by failing to comply with their express and implied contractual undertakings.

24

104.   As a direct and proximate result of the above-described breaches, Plaintiffs have suffered and continue to suffer financial damages.

**WHEREFORE**, Plaintiffs seek that this Court: (i) award actual, compensatory, consequential, and incidental damages against UFG in an amount to be proven at trial; (ii) award all attorneys' fees and costs incurred in connection with this dispute pursuant to Section 21.4 of the Franchise Agreements; (iii) award pre- and post-judgment interest; and (iv) grant such other and further relief as the Court deems just and proper.

### Count VI
### Accounting

105.   Plaintiffs incorporate paragraphs 1 through 71, *supra*, as if fully set forth herein.

106.   Pursuant to Section 10.3 of the Franchise Agreements, UNITS franchisees, such as Plaintiffs, are required to "make monthly National Advertising Fund Contributions equal to two percent (2%) of that month's Gross Sales."

107.   Pursuant to Section 10.3.4 of the Franchise Agreements and upon request, UNITS franchisees are entitled to an annual accounting of the National Advertising Fund.

108.   Plaintiffs have requested the annual accounting information for the National Advertising Fund and such requests have gone ignored and/or have been insufficiently addressed.

**WHEREFORE**, Plaintiffs seek that this Court: (i) order UFG to provide Plaintiffs an accounting of the National Advertising Fund for years 2020 through 2024; (ii) award all attorneys' fees and costs incurred in connection with this dispute pursuant to Section 21.4 of the Franchise Agreements; (iii) award pre- and post-judgment interest; and (iv) grant such other and further relief as the Court deems just and proper.

### Count VII
### Violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA")
### Fla. Stat. § 501.204

**ZARCO EINHORN SALKOWSKI, P.A.**
ONE BISCAYNE TOWER | 2 S. BISCAYNE BLVD., 34TH FLOOR | MIAMI, FLORIDA 33131 | T: (305) 374-5418 | F: (305) 374-5428

109.    Plaintiff, Caleco Investments, LLC, incorporate paragraphs 1 through 71, above as though fully set forth herein.

110.    UFG's mispresented the UNITS franchised business opportunity in various ways, including but not limited to, (i) falsely representing the UNITS business opportunity as a "proprietary system" despite the absence of any proprietary features in the UNITS the business model, UNITS containers or any related equipment, that are unique or exclusively owned or used by UFG; (ii) misrepresenting the profitability and overall financial performance of its franchisees on an individual and systemwide basis; and (iii) failing to properly disclose the nature of the business relationship with various vendors that franchisees are required to utilize and pursuant to which UFG receives undisclosed rebates and other financial benefits.

111.    UFG's actions constitute an unfair and deceptive act as contemplated under FDUTPA and, therefore, constitute a violation of FDUTPA.

**WHEREFORE**, Plaintiff, Caleco Investments, LLC, seeks that this Court: (i) award actual damages against UFG in an amount to be proven at trial; (ii) award all attorneys' fees and costs incurred in connection with this dispute; (iii) award pre- and post-judgment interest; and (iv) such other and further relief as the Court deems just and proper.

**Count VIII**
**Violation of the New Jersey Consumer Fraud Act ("NJCFA")**
**N.J.S.A. § 56:8-1, *et seq.***

112.    Plaintiffs, Bird and Pup, Inc. and GR Moving and Storage, LLC ("NJ Plaintiffs"), incorporate paragraphs 1 through 71, *supra*, as if fully set forth herein.

113.    This is an action for violation of the NJCFA, N.J.S.A, §§ 56:8-1, *et seq.*

114.    NJ Plaintiffs qualify as "consumers" and have standing to bring a claim under the NJCFA.

ZARCO EINHORN SALKOWSKI, P.A.
ONE BISCAYNE TOWER | 2 S. BISCAYNE BLVD., 34TH FLOOR | MIAMI, FLORIDA 33131 | T: (305) 374-5418 | F: (305) 374-5428

115.    UFG is a "person" within the confines of the NJCFA and as contemplated under N.J.S.A, § 56:8-1(d).

116.    UFG's actions, as fully set forth above, constitute unconscionable commercial practices in violation of the NJCFA pursuant to N.J.S.A. § 56:8-2.

117.    As a direct, proximate and foreseeable result of UFG's violation of the NJCFA, NJ Plaintiffs have suffered substantial damages.

**WHEREFORE**, Plaintiffs, Bird and Pup, Inc. and GR Moving and Storage, LLC, seek that this Court: (i) award actual damages against UFG in an amount to be proven at trial; (ii) award all attorneys' fees and costs incurred in connection with this dispute; (iii) award pre- and post-judgment interest; and (iv) grant such other and further relief as the Court deems just and proper.

**Count IX**
**Violation of the New York State Deceptive Acts and Practices Act ("NYDPA")**
**N.Y. Gen. Bus. Law §§ 349-350**

118.    Plaintiff, Sail Away Storage Corp., incorporates paragraphs 1 through 71, *supra*, if as though fully set forth herein.

119.    This is an action for violation of the NYDPA, N.Y. Gen. Bus. Law § 349.

120.    Pursuant to N.Y. Gen. Bus. Law §§ 349- 350-f, deceptive acts or practices in the conduct of any business, trade or commerce are unlawful.

121.    The actions of UFG, as fully set forth above, constitute illegal and deceptive acts or practices in the conduct of any business, trade or commerce.

122.    As a result of UFG's violation of the NYDPA, Plaintiff, Sail Away Storage Corp., has suffered substantial damages.

**WHEREFORE**, Plaintiff, Sail Away Storage Corp, seeks that this Court: (i) award actual damages against UFG in an amount to be proven at trial; (ii) award all attorneys' fees and costs

ZARCO EINHORN SALKOWSKI, P.A.
ONE BISCAYNE TOWER | 2 S. BISCAYNE BLVD., 34TH FLOOR | MIAMI, FLORIDA 33131 | T: (305) 374-5418 | F: (305) 374-5428

incurred in connection with this dispute; (iii) award pre- and post-judgment interest; and (iv) grant

such other and further relief as the Court deems just and proper.

**Count X**
**Violation of the New York General Business Law**
**NY CLS Gen. Bus. § 680, *et. seq.***

123.     Plaintiff, Sail Away Storage Corp., incorporates paragraphs 1 through 71, *supra*, as

if fully set forth herein.

124.     This is a cause of action for violation of the New York General Business Law,

NY CLS Gen. Bus. § 680, *et. seq.*

125.     The UNITS Franchise Agreement at issue is considered a "franchise" within the

meaning of NY CLS Gen. Bus. § 681(3).

126.     Plaintiff, Sail Away Storage Corp., is a "franchisee" within the meaning of NY CLS

Gen. Bus. § 681(4).

127.     UFG is a "franchisor" within the meaning of NY CLS Gen. Bus. § 681(5).

128.     UFG's actions, as fully set forth above, constitute "fraud," "fraudulent

practices" and "deceit" within the meaning of NY CLS Gen. Bus. § 681(10).

129.     By intentionally making false and misleading statements in its FDD, UFG has

violated NY CLS Gen. Bus. § 683(10).

130.     UFG's actions also constitute fraudulent and unlawful practices in violation of

NY CLS Gen. Bus. § 687.

131.     As a direct, proximate and foreseeable result of UFG's violation of the New York

General Business Law, Plaintiff, Sail Away Storage Corp., has suffered substantial damages.

**WHEREFORE**, Plaintiff, Sail Away Storage Corp, seeks that this Court: (i) award actual

damages against UFG in an amount to be proven at trial; (ii) award all attorneys' fees and costs

**ZARCO EINHORN SALKOWSKI, P.A.**
ONE BISCAYNE TOWER │ 2 S. BISCAYNE BLVD., 34TH FLOOR │ MIAMI, FLORIDA 33131 │ T: (305) 374-5418 │ F: (305) 374-5428

incurred in connection with this dispute; (iii) award pre- and post-judgment interest; and (iv) grant such other and further relief as the Court deems just and proper.

### Count XI
### Violation of the Missouri Merchandising Practices Act
### V.A.M.S., § 407.010, *et seq.*

132.    Plaintiffs, Jetco Group Inc. and KC Portable Storage, Inc. ("MO Plaintiffs"), incorporate paragraphs 1 through 71, *supra*, as if fully set forth herein.

133.    This is an action for the violation of the Missouri Merchandising Practices Act, V.A.M.S., §§ 407.010, *et seq.*

134.    MO Plaintiffs are "persons" within the meaning of V.A.M.S. § 407.010(5).

135.    UFG is involved in the sale, trade and/or commerce of UNITS franchises in the State of Missouri within the meaning of V.A.M.S. § 407.010(7).

136.    UFG's actions, as fully set forth above, constitute unfair and deceptive acts or practices in the conduct of trade or commerce in violation of V.A.M.S. § 407.020(1).

137.    As a direct, proximate and foreseeable result of UFG's violations of the Missouri Merchandising Practices Act, MO Plaintiffs have suffered substantial damages.

**WHEREFORE**, Plaintiffs, Jetco Group Inc. and KC Portable Storage, Inc. seek that this Court: (i) award actual damages against UFG in an amount to be proven at trial; (ii) award all attorneys' fees and costs incurred in connection with this dispute; (iii) award pre- and post-judgment interest; and (iv) award such other and further relief as the Court deems just and proper.

### Count XII
### Violation of Violation of the Tennessee Consumer Protection Act ("TCPA")
### Tenn. Stat. § 47-18-102, *et seq.*

138.    Plaintiff, StoreU247, LLC, Plaintiff, Sail Away Storage Corp., incorporates paragraphs 1 through 71, *supra*, as if fully set forth herein.

**ZARCO EINHORN SALKOWSKI, P.A.**
ONE BISCAYNE TOWER │ 2 S. BISCAYNE BLVD., 34TH FLOOR │ MIAMI, FLORIDA 33131 │ T: (305) 374-5418 │ F: (305) 374-5428

139.    Plaintiff, StoreU247, LLC is a "person" and "consumer" "who purchase[d] or to whom [were] offered for sale a franchise," as defined under and protected by the Tennessee Consumer Protection Act, Tenn. Stat. § 47-18-103.

140.    UFG committed an unfair or deceptive act or practice by "using deceptive representations ... in connection with ... services," by "representing that ... services have characteristics ... [or] benefits ... that they do not have" and by "engaging in any other act of practice which is deceptive to the consumer or to any other person," Tenn. Stat. §47-18-104, including various violations of the FTC Rule, which are incorporated by reference and actionable pursuant to Tenn. Stat. § 47-18-115.

141.    As a result of UFG's violation of the TCPA, Plaintiff, StoreU247, LLC, has suffered substantial damages, including but not limited to, its franchise investment and ongoing operating losses.

142.    UFG's unfair or deceptive acts or practices were willful or knowing violations of the TCPA, which entitles Plaintiff, StoreU247, LLC, to three (3) times the actual damages sustained. Tenn. Stat. § 47-18-109(a)(3).

**WHEREFORE**, Plaintiff, StoreU247, LLC. Seeks that this Court: (i) award actual damages against UFG in an amount to be proven at trial; (ii) award all attorneys' fees and costs incurred in connection with this dispute; (iii) award pre- and post-judgment interest; and (iv) grant such other and further relief as the Court deems just and proper.

### Count XIII
### Violation of Massachusetts Unfair Trade Practices Act ("MUTPA")
### MA Gen. Law Chapter 93A, § 1, *et seq.*

143.    Plaintiffs, Evayan Mobile Storage, Inc., Carella Storage LLC, and ATH Storage, LLC ("MA Plaintiffs") incorporate paragraphs 1 through 71, *supra*, as if fully set forth herein.

**ZARCO EINHORN SALKOWSKI, P.A.**
ONE BISCAYNE TOWER │ 2 S. BISCAYNE BLVD., 34ᵀᴴ FLOOR │ MIAMI, FLORIDA 33131 │ T: (305) 374-5418 │ F: (305) 374-5428

144.    UFG is engaged in trade or commerce in the Commonwealth as that term is contemplated under MUPTA or more specifically, "Regulation of Business Practice and Consumer Protection Act," M.G.L. ch. 93A, § 1, *et seq.*

145.    The MUTPA provides that unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful.

146.    UFG's actions, as fully set forth above, constitute unfair methods or competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.

147.    As a result of UFG's violation of the MUTPA, MA Plaintiffs have suffered and continue to suffer substantial damages.

**WHEREFORE**, Plaintiffs, Evayan Mobile Storage, Inc., Carella Storage LLC, and ATH Storage, LLC seek that this Court: (i) award actual damages against UFG in an amount to be proven at trial; (ii) award all attorneys' fees and costs incurred in connection with this dispute; (iii) award pre- and post-judgment interest; and (iv) grant such other and further relief as the Court deems just and proper.

**Count XIV**
**Violation of the Ohio Consumer Sales Practices Act**
**ORC § 1345.01, *et. seq.***

148.    Plaintiff, Plan D LLC, incorporates paragraphs 1 through 71, *supra*, as if fully set forth herein.

149.    This is an action for violation of the Ohio Consumer Sales Practices Act, ORC § 1345.01, *et. seq.*

150.    Plaintiff, Plan D LLC, is a "person" and "consumer" within the meaning of ORC §1345.01(B) and (D).

151.    UFG is a "supplier" within the meaning of ORC §1345.01(C).

ZARCO EINHORN SALKOWSKI, P.A.
ONE BISCAYNE TOWER | 2 S. BISCAYNE BLVD., 34TH FLOOR | MIAMI, FLORIDA 33131 | T: (305) 374-5418 | F: (305) 374-5428

152.   Plan D LLC and UFG were engaged in a "consumer transaction" within the meaning of ORC §1345.01(A).

153.   UFG's actions, as fully set forth above, constitute both unfair or deceptive consumer sales practices as well as unconscionable sales practices in violation of ORC §§ 1345.02 and 1345.03, respectively.

154.   As a direct, proximate and foreseeable result of UFG's violation of the Ohio Consumer Sales Practices Act, Plaintiff, Plan D LLC, has suffered and continues to suffer substantial damages.

**WHEREFORE**, Plaintiff, Plan D LLC seeks that this Court: (i) award actual damages against UFG in an amount to be proven at trial; (ii) award all attorneys' fees and costs incurred in connection with this dispute; (iii) award pre- and post-judgment interest; and (iv) grant such other and further relief as the Court deems just and proper.

**Count XV**
**Violation of the Minnesota Franchise Act**
**MN Stat. § 80C.01, *et. seq.***

155.   Plaintiff, Unites Storage of MN, LLC, incorporates paragraphs 1 through 71, *supra*, as if fully set forth herein.

156.   This is an action for violation of the Minnesota Franchise Act.

157.   Plaintiff, Unites Storage of MN, LLC, is a "franchisee" as contemplated under the Minnesota Franchise Act and as defined under MN Stat. § 80C.01.

158.   UFG is a "franchisor" as contemplated under the Minnesota Franchise Act and as defined under MN Stat. § 80C.01.

159.   UFG's actions, as fully set forth above, constitute a prohibited practice under MN Stat. § 80C.13 and thus, a violation of the Minnesota Franchise Act.

ZARCO EINHORN SALKOWSKI, P.A.
ONE BISCAYNE TOWER | 2 S. BISCAYNE BLVD., 34TH FLOOR | MIAMI, FLORIDA 33131 | T: (305) 374-5418 | F: (305) 374-5428

160.    As a direct, proximate and foreseeable result of UFG's violation of the Minnesota Franchise Act, Plaintiff, Unites Storage of MN, LLC, has suffered substantial damages and is entitled to "damages caused thereby, for rescission, or other relief as the court may deem appropriate." MN Stat. § 80C.17.

**WHEREFORE**, Plaintiff, Unites Storage of MN, LLC seeks that this Court: (i) award actual damages against UFG in an amount to be proven at trial; (ii) award all attorneys' fees and costs incurred in connection with this dispute; (iii) award pre- and post-judgment interest; and (iv) grant such other and further relief as the Court deems just and proper.

### Count XVI
### Violation of Wisconsin's Franchise Investment Law
### WI Stat. § 553.41, *et. seq.*

161.    Plaintiff, Purdy Good Co, incorporates paragraphs 1 through 71, *supra*, as if fully set forth herein.

162.    This is an action for violation of Wisconsin's Franchise Investment Law.

163.    Plaintiff, Purdy Good Co, is a "franchisee" as contemplated under the Wisconsin's Franchise Investment Law and as defined under WI Stat. § 553.03.

164.    UFG is a "franchisor" as contemplated under Wisconsin Franchise Investment Law and as defined under WI Stat. § 553.03.

165.    UFG's actions, as fully set forth above, constitute a fraudulent and prohibited practice within the confines of Wisconsin's Franchise Investment Law and is actionable under WI Stat. § 553.41.

166.    As a direct, proximate and foreseeable result of UFG's violation of Wisconsin Franchise Investment Law, Plaintiff, Purdy Good Co, has suffered substantial damages and is entitled to rescission among other remedies. WI Stat. § 553.51.

**ZARCO EINHORN SALKOWSKI, P.A.**
ONE BISCAYNE TOWER | 2 S. BISCAYNE BLVD., 34TH FLOOR | MIAMI, FLORIDA 33131 | T: (305) 374-5418 | F: (305) 374-5428

**WHEREFORE**, Plaintiff, Purdy Good Co seeks that this Court: (i) award actual damages against UFG in an amount to be proven at trial; (ii) award all attorneys' fees and costs incurred in connection with this dispute; (iii) award pre- and post-judgment interest; and (iv) grant such other and further relief as the Court deems just and proper.

Dated: October 9, 2025                                  Respectfully submitted,


_____

Bruce E. Miller (Fed Bar No. 3393)
Bruce E. Miller, P.A.
1459 Stuart Engals Blvd., Suite 202
Mount Pleasant, SC 29464
T: 843.579.7373
F: 843.614.6417
bmiller@brucemillerlaw.com

**ATTORNEY FOR PLAINTIFFS**

**ZARCO EINHORN SALKOWSKI, P.A.**

*Counsel for Plaintiffs*
One Biscayne Tower
2 S. Biscayne Blvd., 34th Floor
Miami, Florida 33131
Telephone: (305) 374-5418
Telecopier: (305) 374-5428

By: */s/ Robert Zarco*_____
    **ROBERT ZARCO (FBN 502138)**
    E-mail: rzarco@zarcolaw.com
    **HIMANSHU M. PATEL (FBN 0167223)**
    E-mail: hpatel@zarcolaw.com
    E-mail: acoro@zarcolaw.com
    **BRENDA PHANG (FBN 1012334)**
    E-mail: bphang@zarcolaw.com
    E-mail: eservice@zarcolaw.com
    **F. ALAINA RODRIGUEZ (FBN 1070046)**
    E-mail: farodriguez@zarcolaw.com
**Pro hac vice motions**
**to be filed for all Florida attorneys**

**Attorneys for Plaintiffs**

34